UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONNELL WILSON,

        Petitioner,

           v.                            CAUSE NO. 3:22-CV-205-JD-MGG

RON NEAL,

        Respondent.

## OPINION AND ORDER

Donnell Wilson, by counsel, filed a habeas corpus petition to challenge his conviction for murder and armed robbery under Case No. 45G01-1303-MR-4. On post-conviction review, on November 17, 2020, the Indiana Supreme Court resentenced him to one hundred years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> In March 2013, sixteen-year-old Donnell Wilson, his then-girlfriend, her brother Jonte Crawford, and another of the Crawfords' relatives were all walking home from playing basketball in their hometown of Gary, Indiana. When the group encountered fifteen-year-old Derrick Thompson, Wilson and Jonte flashed the handguns they were carrying and began harassing and intimidating Thompson, making references to the local Tre 7 gang. The pair then took Thompson's smartphone and headphones and walked away.

A short time later, the group happened upon brothers Shaqwone Ham and Charles Wood. Wilson and Jonte were members of several interrelated gangs, including the Get Fresh Boys, Tre 7, and Glen Park Affiliated, which were all at odds with the Bottom Side gang, to which Ham and Wood belonged. Wilson had previously argued in person with the brothers and their disputes had continued online with the brothers threatening to fight Wilson. The groups initially exchanged greetings, but Wilson and Jonte soon began to argue with the brothers. Wilson exclaimed, "Oh, y'all looking for me? I'm in your hood." Seconds later, he fatally shot Wood in the head. When Ham tried to run, Jonte shot him several times, killing him too. It is unclear from the record if Wilson also shot at Ham. The brothers were unarmed.

Three hours before the murders, Wilson—who had previously made several gang-related posts on Twitter—sent out a new tweet declaring "Glen Park or get shot," referring to the Gary neighborhood where he lived. An hour after the murder, he tweeted "Chillen wit my bros #[GetFreshBoys]." Jonte and Wilson were quickly arrested, and police found Thompson's possessions on Jonte. Wilson was charged with two counts of murder, Class B felony armed robbery, and a Class D felony conspiracy to commit criminal gang activity. The State also sought a criminal gang enhancement.

While Wilson was lodged in the Lake County Jail awaiting trial, he told his cellmate he killed Ham and Wood because they were affiliated with the rival Bottom Side gang. He also explained how his gang affiliation had led to Twitter disputes with members of the Bottom Side gang. Wilson, along with some fellow inmates, later jumped this cellmate because he was from the "other side of the bridge" dividing Gary. During this period, Wilson was also recorded on a jailhouse video conference stating he wanted to "smash" a member of a rival gang incarcerated in the same facility and indicated a desire to continue participating in gang activity.

After a four-day trial beginning in June 2014, a jury found Wilson guilty on all counts. The trial court sentenced Wilson to a term of sixty years for the first murder conviction, fifty-five consecutive years for the second murder conviction, six consecutive years for armed robbery, and two years for criminal gang activity, with an additional sixty consecutive years added under the criminal gang enhancement, for an aggregate sentence of 183 years. Wilson's trial counsel did not retain any experts in preparation for the sentencing hearing and did not present any witnesses at sentencing. When handing down the sentence, the court cited several aggravating factors, but found Wilson's youth to be a mitigating factor.

ECF 7-19 at 2-3; *Wilson v. State*, 157 N.E.3d 1163, 1167–68 (Ind. 2020).

In the habeas petition, Wilson asserts that he was a juvenile at the time of his offense and that his sentence amounts to a mandatory de facto sentence of life without parole in violation of the Eighth Amendment as set forth in *Miller v. Alabama*, 567 U.S. 460 (2012).

## TIMELINESS

The Warden argues that the petition is untimely. The statute of limitations for habeas corpus cases is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, the parties agree that the limitations period began to run in this case from the final judgment date but disagree as to when the judgment became final. The timeliness analysis is complicated by the atypical procedural history of the State court proceedings. Specifically, on August 5, 2014, the Lake Superior Court entered judgment in the criminal case. ECF 7-1 at 9. Wilson initiated a direct appeal, which culminated in the Indiana Supreme Court's denial of transfer on August 19, 2015. ECF 9-2. On August 11, 2016, Wilson initiated post-conviction proceedings, but the Lake Superior Court denied relief, and he appealed. ECF 7-9 at 8-14. On November 17, 2020, the Indiana Supreme Court issued an opinion, finding that Wilson's appellate counsel was ineffective for failing to challenge Wilson's sentence under Indiana Appellate Rule 7(B). ECF 7-19. In lieu of allowing Wilson to pursue this challenge on a second direct appeal, the Indiana Supreme Court conducted an analysis under the rule and reduced Wilson's sentence from one hundred eighty-one years to one hundred years. *Id.* On January 22, 2021, the Indiana Supreme Court denied Wilson's petition for rehearing. ECF 7-18. On February 12, 2021, the Lake Superior Court issued a sentencing statement in accordance with the Indiana Supreme Court's opinion. ECF 7-9 at 15. On February 22, 2021, Wilson filed a notice of appeal with respect to the sentencing statement, but, two days later, the Indiana Court of Appeals dismissed the appeal with prejudice on the basis that "decisions and rulings by the Indiana Supreme Court cannot be appealed in this court." ECF 7-21; ECF 7-22.

The Warden argues that judgment became final at the conclusion of direct review when the time to petition for writ of certiorari expired on November 17, 2015, and that the time to file a federal habeas petition expired on April 29, 2021. Wilson responds that the sentence modification at the post-conviction stage amounted to a second final judgment that reset the limitations period. According to the Warden, the post-conviction sentence modification was not a new trial court sentencing proceeding and so did not amount to a new final judgment that would reset the limitations.

For this proposition, the Warden relies on two cases. First, in *Magwood v. Patterson*, 561 U.S. 320 (2010), the Supreme Court of the United States considered whether Magwood's habeas petition was a second or successive petition in violation of 28 U.S.C. § 2244(b). His conviction first became final in July 1983, but he was granted habeas relief in federal court, and, in September 1986, the trial court reimposed the death penalty after holding a new sentencing proceeding. *Id.* at 325-26. Magwood then filed a second federal habeas petition challenging his sentence, and the district court found that the resentencing led to a new judgment, so the second habeas petition did not violate Section 2244(b). *Id.* at 327-28. The Supreme Court agreed with the reasoning of the district court. *Id.* at 331-32.

Next, in *White v. U.S.*, 745 F.3d 834 (7th Cir. 2014), the Seventh Circuit considered whether White's sentence reduction under 18 U.S.C. § 3582(c) was a new judgment that would reset the federal limitations period and that would not require prior judicial authorization to pursue a second or successive petition. The Seventh Circuit found that the sentence reduction did not amount to a new judgment, citing several material

5

differences. *Id.* at 836-37. The appellate court observed that the sentence reduction procedure did not require the trial court "to receive evidence or reopen any issue decided in the original sentencing." *Id.* It observed that the court that reduced the sentence did not "hold a hearing at which the defendant is present and a new sentence in pronounced."[1] *Id.* "Instead the judge [took] as established the findings and calculations that led to the sentence and change[d] only the revised Guideline, leaving everything else the same. The penalty goes down, but the original judgment is not declared invalid." *Id.*

In resentencing Wilson under Ind. R. App. 7(B), the Indiana Supreme Court described the scope of its review as follows:

> Examining only the facts available on direct appeal, we conclude that a downward adjustment to Wilson's sentence is appropriate. We modify a sentence only when we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The principal role of Appellate Rule 7(B) review should be to attempt to leaven the outliers. The point is not to achieve a perceived correct sentence. Rather, appellate review and revision ultimately boils down to the appellate court's collective sense of what is appropriate. Whether a sentence should be deemed inappropriate turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. Because the number of counts that can be charged and proved is virtually entirely at the discretion of the prosecution, appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.

---

[1] In the decision below, the district court described the sentence reduction proceedings as follows. "The motion was unopposed by the government and disposed of with a short, one page order reducing Petitioner's sentence that was careful to note that 'except as otherwise provided, all provisions of the judgment dated 12/1/06 shall remain in effect.'" *White v. U.S.*, 2013 WL 5323536, at *3 (C.D. Ill. 2013).

ECF 7-19 at 12. The court considered the nature of the offense, noting that it was senseless, reprehensible, and related to ongoing criminal gang activity, but that Wilson did not torture the victims or allow them to linger in pain. *Id.* at 12-13. The court considered Wilson's character, noting that his prior criminal history was not particularly egregious but that his stated desire to continue gang activity during his pretrial detention weighed against him. *Id.* at 13-14. The court further considered Wilson's youth at the time of the offense and compared his sentence to sentences in similar offenses by similarly youthful offenders. *Id.* The Indiana Supreme Court concluded, "[T]he main factor weighing in favor of a shorter sentence is Wilson's age" and reduced the sentence to one hundred years of incarceration. *Id.*

The Indiana Supreme Court's resentencing order on post-conviction review lies somewhere in between a new sentencing hearing described in *Magwood* and the formulaic sentence reduction described in *White*. The Indiana Supreme Court did not consider new evidence but did consider new arguments regarding Wilson's youth and the proportionality of his sentence when compared to similar cases. The Indiana Supreme Court also appeared to independently consider sentencing factors rather than merely deferring to the trial court's assessment and assignment of weight. And, while the Indiana Supreme Court did not hold a sentencing hearing in which Wilson was present and a new sentence was announced, the parties had thoroughly briefed the issues and engaged in oral argument, and the Indiana Supreme Court announced the new sentence in a lengthy well-reasoned opinion -– a far cry from the summary

procedure in *White* that consisted of only an unopposed motion and a single-page order.

The court further observes that the broad principal factors of nature of the offense and the character of the offender appear to fully encompass the more specific sentencing factors set forth by statute for trial courts' consideration. *See* Ind. Code § 35-38-1-7.1. Moreover, the Indiana Supreme Court has observed that appellate review under Ind. R. App. 7(B) is "an exercise of judgment that is unlike the usual appellate process, and is very similar to the trial court's function" in assigning relative weight to sentencing factors. *Cardwell v. State*, 895 N.E.2d 1219, 1223 (Ind. 2008).

Additionally, the Supreme Court of the United States has held that, "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet final for purposes of § 2244(d)(1)(A)." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). Here, the Indiana Supreme Court expressly opted to resolve the resentencing claim on post-conviction review as a substitute for allowing Wilson to pursue the claim on a second direct appeal. Consequently, the court finds that resentencing under Ind. R. App. 7(B) more closely resembles the new sentencing hearing in *Magwood* or the out-of-time direct appeal in *Jimenez* than the sentence reduction in *White* and that it thus serves as a new judgment to reset the federal limitations period.

The parties also dispute when the limitations period began to run. The Warden argues that the limitations period began to run on February 12, 2021, when the Lake

8

Superior Court issued the sentencing statement at the direction of the Indiana Supreme Court. According to the Warden, the sentence became final on that date because Wilson had no valid avenues for appealing it. Wilson argues that limitations period began to run only after the Indiana Court of Appeals dismissed the appeal of the sentencing statement with prejudice and the time for petitioning the Indiana Supreme Court for a transfer expired in March 2021.

To the Warden's point, the Indiana Court of Appeals dismissed the appeal with prejudice by finding that it did not have subject matter jurisdiction to review an order of the Indiana Supreme Court, and Wilson cannot challenge this this jurisdictional finding on habeas review. *See Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). Further, given that the Indiana Supreme Court's order was precedential binding authority, it is unclear how the lower courts could have meaningfully considered challenges to it even absent jurisdictional concerns. *See Dragon v. State*, 774 N.E.2d 103, 107 (Ind. App. 2002) ("We are bound by the decisions of our supreme court. Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment."). And the Indiana Supreme Court conveyed its disinterest in reviewing its own order when it denied Wilson's petition for a rehearing. Accordingly, the record supports that Wilson could not appeal the Indiana Supreme Court's order through the State courts.

Nevertheless, there is a more typical avenue for appealing the decisions of a State court of last resort – a petition for a writ of certiorari to the Supreme Court of the United States. *See* U.S. Sup. Ct. R. 10. In *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009), the

Supreme Court of the United States held that the judgment becomes final for purposes of Section 2244(d)(1)(A) when the time for filing a petition for a writ of certiorari expires. The court sees no reason to deviate from that starting point, particularly given that the Indiana Supreme Court in resentencing Wilson under Ind. R. App. 7(B) acted as an appellate court on direct review.

Therefore, Wilson's sentence became final for purposes of 28 U.S.C. § 2244(d)(1)(A) when the time for petitioning the Supreme Court of the United States for a writ of certiorari expired on April 22, 2021. *See* U.S. Sup. Ct. R. 13(1) (petition for writs of certiorari must filed within 90 days after entry of judgment); *Jimenez*, 555 U.S. at 119. The limitations period expired one year later on April 22, 2022. Wilson filed the habeas petition on March 15, 2022 (ECF 1), so the habeas petition is timely.

<u>STANDARD OF REVIEW</u>

Wilson argues that the Indiana Supreme Court never considered his Eighth Amendment challenge to his sentence, reasoning that the Indiana Supreme Court resentenced him to one hundred years of incarceration and summarily denied his attempt to challenge the new sentence through a petition for a rehearing. The Warden argues that the Indiana Supreme Court adjudicated Wilson's Eighth Amendment challenge to the 100-year sentence because it amounts to a less persuasive version of his challenge to the 181-year sentence.

If a State court adjudicates a claim on the merits, federal courts may grant habeas relief on that claim only if the petitioner demonstrates that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These standards require substantial deference to State court decisions and are "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Id.* "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* "To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

By contrast, "[w]hen no state court has squarely addressed the merits of a habeas claim, . . . we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we dispose of the matter as law and justice require." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011) "This is a more generous standard: we review the petitioner's constitutional claim with deference to the state court, but ultimately de novo." *Id.*

The court acknowledges that Wilson's argument in the petition for a rehearing and in the habeas petition against the 100-year sentence is different, if only on the margins, than his argument against the 181-year sentence. For example, in his brief directed to the Indiana Court of Appeals, Wilson observed that he could not be released

11

until age 107 and that the life expectancy for American males was age 76. ECF 7-11 at 24. In the response to the petition to transfer directed at the Indiana Supreme Court, he argued that the Indiana Court of Appeals did not need to provide a detailed definition of a de facto life sentence because a sentence that precludes release until age 107 "clearly is one." ECF 7-16 at 12. However, the tone of Wilson's argument shifted after the resentencing – in the petition for rehearing, Wilson argued that the Indiana Supreme Court neglected to consider "the grim reality of an offender's and especially a juvenile offender's life, inside prison walls." ECF 9-20 at 9. He now seeks to tether the definition of a de facto life sentence to the average life expectancy for juveniles serving life sentences. *Id.* at 10; ECF 1 at 10-14.

That said, the Seventh Circuit has never held that adjudication on the merits requires the State court to consider the claim in exactly the same form and context that it is presented in the habeas petition. Instead, the Seventh Circuit has found that State courts have adjudicated the merits of a claim where the State court has considered the habeas claim in a different context. For example, in *Sturgeon v. Chandler*, 552 F.3d 604, 610 (7th Cir. 2009), the petitioner argued that the State court resolved his claim that he was entitled to a competency hearing on State law grounds and did not consider his constitutional argument. The Seventh Circuit disagreed observing that the State court had considered the constitutional argument for a competency hearing in resolving a related ineffective assistance of appellate counsel claim. *Id.* at 611-12. The Seventh Circuit reasoned that the State court could not have reached a different decision on the standalone competency hearing claim and "the merits were effectively reached." *Id.*

Similarly, in *Murdock v. Dorethy*, 846 F.3d 203, 208–09 (7th Cir. 2017), the Seventh Circuit determined that the State courts' decision on whether to suppress his pretrial statements equated to an adjudication on the merits of his claim that trial counsel provided ineffective assistance for failing to suppress the pretrial statements. And, in *Flint v. Carr*, 10 F.4th 786, 796–97 (7th Cir. 2021), the Seventh Circuit determined that the State court's decision that trial counsel's failure to object on double jeopardy grounds did not cause prejudice equated to an adjudication on the merits on the underlying double jeopardy claim.

Here, Wilson's claim contains two essential components: (1) whether *Miller* extends to de facto life sentences; and (2) whether his 100-year sentence qualifies as a de facto life sentence. On post-conviction appeal, Wilson's claim also contained two essential components: (1) whether *Miller* extends to de facto life sentences; and (2) whether his 181-year sentence qualified as a de facto life sentence. In resolving Wilson's claim on post-conviction appeal, the Indiana Supreme Court determined that *Miller* did not extend to de facto life sentences. As in *Sturgeon*, logic dictates that the Indiana Supreme Court could not have reached a different conclusion on a challenge to the 100-year sentence in light of its resolution of the challenge to the 181-year sentence. Consequently, the deferential standard of review under 28 U.S.C. § 2254(d) applies to Wilson's habeas claim.

## DISCUSSION

Wilson asserts that he was a juvenile at the time of his offense and that his sentence amounts to a mandatory de facto sentence of life without parole in violation of

the Eighth Amendment as set forth in *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the Supreme Court of the United States held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." *Id.* at 465. The Supreme Court reasoned that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472. The Supreme Court reasoned that mandatory penalty schemes prevent the sentencing court from accounting for youth-related considerations in assessing whether the punishment is proportionate. *Id.* at 474-78, The Supreme Court did not foreclose life without possibility of parole for all juvenile offenders but required sentencing courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

Notably, the term "de facto life sentence" appears nowhere in *Miller*, and Wilson offers no definition. The term appears to arise from *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016), in which the Seventh Circuit considered a 100-year sentence in which the petitioner had no possibility of early release under Illinois law.[2] The Seventh Circuit distinguished de jure life sentences from de facto life sentences, which are "sentences

---

[2] The Seventh Circuit considered this claim in the context of a habeas petition challenging a State conviction. *Id.* at 909. However, the Seventh Circuit did not defer to the decision of the State court under the standard set forth in 28 U.S.C. § 2254(d)(1) because the petitioner had not presented the claim in State court. *Id.* at 912. Therefore, while *McKinley* indicates that the Indiana Supreme Court's decision here was incorrect, it does not answer the question before this court as to whether the decision was unreasonable.

denominated in number of years yet highly likely to result in imprisonment for life."[3]

*Id.* The Seventh Circuit found no logical distinction between de jure life sentences and de facto life sentence and found that *Miller* extended to de facto life sentences. *Id.* Nevertheless, the holding of *Miller* applied to only sentences of life without possibility of parole, and the Supreme Court has not extended this holding to de facto life sentences in subsequent related cases. *See Jones v. Mississippi*, 141 S.Ct. 1307 (2021); *Montgomery v. Louisiana*, 577 U.S. 190 (2016). "Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Lopez v. Smith*, 574 U.S. 1 (2014).

Against this backdrop, the Indiana Supreme Court considered Wilson's argument that *Miller* should extend to de facto life sentences. ECF 7-19 at 4-9. The court began by outlining the line of cases in which the Supreme Court of the United States has held that the Eighth Amendment affords juvenile criminals additional protections. *Id.* at 5-6 (citing *Miller*, 567 U.S. 460; *Graham v. Fla.*, 560 U.S. 48 (2010) (no life without possibility of parole sentences for non-homicide juvenile offenders); *Roper v. Simmons*, 543 U.S. 551, 575 (2005) (no death penalty for juvenile offenders)). The Indiana Supreme Court observed that a split of authority had formed as to whether *Miller* extended to de facto life sentences or aggregate sentences as opposed to the sentence for a particular

---

[3] In other words, the Seventh Circuit uses the term "de jure" to refer to when a trial court literally imposes a sentence of "life without possibility of parole" and uses "de facto" to refer to sentences that are so long that they are the practical equivalent to life without possibility of parole.

charge, or whether *Miller* applied solely to de jure sentences of life without possibility of parole. *Id.* at 6-7.

The Indiana Supreme Court observed that *Graham* and *Miller* limited their holdings to life without possibility of parole and focused its analysis on that particular type of sentence. *Id.* at 7. The court noted that the Supreme Court of the United States has cautioned lower courts against expanding Eighth Amendment protections and reasoned that "determining the reach of [the Eighth Amendment] is inherently a line drawing exercise best left to the U.S. Supreme Court." *Id.* at 8. The court further observed that "determining what sentence constitutes a de facto life sentence would be a task completely unmoored" from any guidance provided by the Supreme Court of the United States and that any determination would amount to guesswork likely requiring substantial and potentially unnecessary changes to Indiana's sentencing scheme. *Id.* On this basis, the Indiana Supreme Court sided with the courts finding that *Miller* applied solely to de jure sentences of life without possibility of parole. *Id.*

Upon careful review of relevant caselaw, this court cannot find that the State court contradicted or unreasonably applied clearly established law as determined by the Supreme Court of the United States. To start, it is undisputed that no Supreme Court case squarely addresses the issue of whether individualized consideration is required for de facto life sentences for juvenile homicide offenders. *Graham* and *Miller* are replete with language suggesting that life without possibility of parole is a particularly harsh sentence for juveniles and limiting their holdings to that specific sentence. For example, in *Graham*, the Supreme Court observed that "life without parole

sentences share some characteristics with death sentences that are shared by no other sentences" and that "[l]ife without parole is an especially harsh punishment for a juvenile." 560 U.S. at 69-70. The Supreme Court further characterized the holding of *Graham* as a "clear line" that "is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment." *Id.* at 74; *see also id.* at 124. (Alito, J., dissenting) ("Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole."). In *Miller*, the Supreme Court also focused on the specific sentence of life without parole, referring to it as "the harshest possible penalty for juveniles" and contrasting it with the lesser sentences of "a lifetime prison term with possibility of parole or a lengthy term of years." 567 U.S. at 489.

Even the courts that have extended this procedural requirement to de facto life sentences appear to recognize the limits of these holdings, often reasoning that they should so extend as a matter of logic. *See e.g., State v. Ramos*, 387 P.3d 650, 660 (Wash. 2017); *State v. Zuber*, 152 A.3d 197, 212 (N.J. 2017); *State v. Moore*, 76 N.E.3d 1127, 1140 (Ohio 2016); *Henry v. State*, 175 So. 3d 675, 679 (Fla. 2015); *Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014). For example, in *Moore v. Biter*, 725 F.3d 1184, 1191 (9th Cir. 2013), the Ninth Circuit reasoned:

> Moore's sentence of 254 years is materially indistinguishable from a life sentence without parole because Moore will not be eligible for parole within his lifetime. Moore's sentence determines at the outset that Moore never will be fit to reenter society. His sentence results in the same consequences as Graham's sentence [of life without possibility of parole]. Moore must live the remainder of his life in prison, knowing that he is

> guaranteed to die in prison regardless of his remorse, reflection, or
> growth.

To be sure, the Ninth Circuit's reasoning has persuasive force, but the State court considered this opposing view and rejected it based on the express language of *Graham* and *Miller.* And, as noted by the State court, the Supreme Court must draw the line for constitutional protections for juvenile offenders somewhere, and attempting to discern where that line will be drawn based on prior decisions that do not squarely address the issue necessarily amounts to guesswork. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Lopez v. Smith*, 574 U.S. 1, 6 (2014) ("We have before cautioned the lower courts . . . against framing our precedents at such a high level of generality.").

Further, numerous courts have also declined to extend *Graham* and *Miller* to de facto sentences for the same reasons discussed by the Indiana Supreme Court. *See e.g., U.S. v. Sparks*, 941 F.3d 748, 754 (5th Cir. 2019); *State v. Soto-Fong*, 474 P.3d 34, 41 (Ariz. 2020); *State v. Slocumb*, 827 S.E.2d 148, 156 (S.C. 2019); *Veal v. State*, 810 S.E.2d 127, 129 (Ga. 2018) *Lucero v. People*, 394 P.3d 1128, 1134 (Colo. 2017); *State v. Ali*, 895 N.W.2d 237, 246 (Minn. 2017); *Willbanks v. Dept. of Corrections*, 522 S.W.3d 238, 246 (Mo. 2017); *Vasquez v. Cmmw.*, 781 S.E.2d 920, 925 (Va. 2016); *State v. Brown*, 118 So. 3d 332, 342 (La. 2013). The decisions of these courts demonstrate that "there are reasonable arguments on both sides—which is all [the State] needs to prevail in this AEDPA case." *White v. Woodall*, 572 U.S. 415, 427 (2014); *see also Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir.

2006) ("The variety in practice among the state courts and the various federal courts shows, unfortunately for Thompson, that there is no standard clearly established by the Supreme Court of the United States that is binding on all."). Additionally, two other federal circuits have found on habeas review that a State court's determination that *Miller* did not extend to de facto sentences was not unreasonable. *Ali v. Roy*, 950 F.3d 572, 576 (8th Cir. 2020); *Bunch v. Smith*, 685 F.3d 546, 553 (6th Cir. 2012); *but see Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017) (finding on habeas review that a State court's determination that *Miller* did not extend to de facto sentences was unreasonable); *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013) (same). On this basis, Wilson cannot persuade the court that the decision of the Indiana Supreme Court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

Wilson argues that his sentence should qualify as a de facto life sentence based on the proposition that incarcerated individuals have lower average life spans than the general population. He relies on statistics indicating that the average life span of an incarcerated juveniles serving life sentences is 50.6 years. Because full consideration of this argument is unnecessary to resolve this case, the court will simply address Wilson's characterization of the *McKinley* case as "nearly identical" to his own. ECF 1 at 12.

In *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016), in which the Seventh Circuit extended *Miller* to de facto sentences, the petitioner received a 100-year sentence for first-degree murder. *Id.* at 909. Under Illinois law, those convicted of first-degree murder had no opportunity to earn credit time or to otherwise obtain early release. As a

result, the petitioner would be 116 years old on his release date. *Id.* The Seventh Circuit found no need to define the parameters of what constitutes a de facto life sentence with particularity, instead presenting this sentence as an obvious example and finding that it was "--unless there is a radical increase, at present unforeseeable, in longevity within the next 100 years—a de facto life sentence." *Id.* at 911. The other federal circuits extending *Miller* to de facto sentences did so in the context of even lengthier sentences and similarly found it unnecessary to specifically define de facto sentences. *See Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017) (eligible for parole at age 131); *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013) (eligible for parole at age 144).

The Indiana Supreme Court also sentenced Wilson to 100 years of incarceration, but this sentence is not "nearly identical" to the sentence in *McKinley*. Unlike the petitioner in *McKinley*, Wilson has the opportunity to earn credit time, and he will be sixty-six years old on his earliest possible release date. ECF 1 at 10-11. It is unclear whether this qualifies as a de facto sentence, but it does not obviously qualify like the sentences in *McKinley*, *Budder*, and *Moore.* Stated otherwise, it does not require speculation about scientific development or medical breakthroughs to reasonably believe that an individual might live to age sixty-six. While Wilson's sentence is substantial, it is materially distinguishable from the sentences that have been recognized by federal circuits as de facto life sentences.

CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. §

20

2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of *Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017), and *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013), the court will grant a certificate of appealability on the issue of whether the Indiana Supreme Court contradicted or unreasonably applied clearly established law as determined by the Supreme Court of the United States by determining that the Eighth Amendment does not require individualized consideration to sentence juvenile homicide offenders to de facto life sentences.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); GRANTS a certificate of appealability on the issue of whether the Indiana Supreme Court contradicted or unreasonably applied clearly established law as determined by the Supreme Court of the United States by determining that the Eighth Amendment does not require individualized consideration to sentence juvenile homicide offenders to de facto life sentences; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on May 31, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT